## Mitchell Estate

*E. J. O'Halloran*, for claimant.

*Judith J. Jamison, Special Assistant Attorney General* and *Louis Marion*, for Commonwealth.

KLEIN, P. J., December 22, 1960.—Paul V. Mitchell died on June 19, 1957, intestate, unmarried and without issue. Letters of administration were issued to Paul H. Hornsleth, who, in due course, filed his account, which came before me for audit on May 5, 1958. The administrator, in accordance with the requirements of Philadelphia Orphans' Court Rules 69.4 (Supreme Court O. C. rules, §13, rule 1) and 69.5, filed a report setting forth the investigation he made to ascertain if decedent was survived by any next-of-kin entitled to his estate. He was unable to find any heirs.

The balance in the estate, approximately $725, was therefore awarded to the Commonwealth, to be paid into the State treasury, without escheat, pursuant to section 1314 of the Fiscal Code of April 9, 1929, P. L. 343.

The administrator paid the balance in his hands to the State treasurer, in compliance with the directions

in the adjudication, whereupon he was discharged as administrator.

After the money was paid into the treasury, Olive M. Daddysman and Roger E. Mitchell, who claim to be a sister and a brother, respectively, of decedent, and Gloria R. Greenlee, who claims to be a sister of the half-blood, appeared and made claim to the fund. There appears to be little question of their relationship to decedent and that they were his next-of-kin, entitled to his estate under the Intestate Act.

What procedure should be followed to enable these relatives to obtain possession of the fund to which they are entitled?

Heretofore, there has been no uniformity of practice in dealing with such situations. In some cases the Board of Finance and Revenue, if satisfied, upon studying the proof submitted to it, that claimants had established their relationship to decedent, made distribution directly to them. In other cases, the board required a new administration to be raised and then paid the fund to the administrator who accounted therefor in the orphans' court.

In order to formulate a uniform practice, the Board of Finance and Revenue requested the advice of Attorney General Alpern relative to the procedure to be followed when a petition has been presented to it, seeking a refund of money paid to the Commonwealth as a result of an order of court under either of the two following acts:

(1) Section 1314 of the Fiscal Code of April 9, 1929, P. L. 343 (to the Commonwealth as custodian of funds belonging to heirs, the identity or whereabouts of whom is unknown);

(2) Section 3 (6) of the Intestate Act of April 24, 1947, P. L. 80 (to the Commonwealth as heir).

By letter dated December 7, 1959, addressed to W. Ken Duffy, Secretary, Board of Finance and Revenue, Ralph S. Snyder, Deputy Attorney General, said, inter alia:

"The authority of the Board of Finance and Revenue in entertaining petitions for refunds of this type is contained in section 504, 72 P.S. 504 of the Fiscal Code, supra, which provides for the right of an *owner* or his legal representative to apply for a refund and have refunded to him moneys paid to the Commonwealth under certain circumstances when he has proved ownership or the right of possession to the satisfaction of the Board.

"Thus, 'ownership' or the 'right of possession' become the keywords in the answer which you have requested of us. Ownership or the right of possession in a decedent's estate is conditioned upon a right of distribution. Under the Orphans' Court Act of August 10, 1951, P. L. 1163, 20 P. S. §2080.101 et seq., and generally in the legislation which preceded it, the Act of June 7, 1917, P. L. 363, the Orphans' Court has exclusive jurisdiction over the administration and distribution of real and personal property of decedent's estates. Distribution, of course, is determined either by a finding of kinship where intestacy is the problem or the identity of a legatee or devisee where a bequest or devise in a will is involved. In either case, until a court has made such a determination there could be no ownership or the right of possession as those terms are used in the Fiscal Code.

"When a court has directed that the money be paid to the Commonwealth by virtue of the identity or whereabouts of an owner being unknown, as is the case under Section 1314, supra, that court, in effect, has ordered that the Commonwealth hold the money as a custodian until the heir, devisee or legatee has

appeared and his identity be proven. On the other hand, where the court has made its adjudication that the Commonwealth is the heir under the Intestate Act, it would naturally direct that the monies be paid to the Commonwealth to be held by it in fee. In the former case no specific owner has been determined by the court and in the latter the Commonwealth is the owner. In either event, it would be the duty of the court and only the court to determine the ownership or right of possession of a fund so paid. For the Board to make such a determination in either one of these cases would be tantamount to a usurpation of the power of the court and its exclusive jurisdiction in questions involving the determination of the right to the distribution of a decedent's estate."

Mr. Snyder concluded by stating that:

"In such cases, therefore, where the court has made an order directing payment under either of the two Acts mentioned in your letter, the Board should not refund any monies unless the court which originally ordered the monies paid to the Commonwealth has made a subsequent determination as to the right of the individual presently claiming."

We are in full accord with Mr. Snyder's conclusions. For the board to make its own determination of the merits of the alleged relationship of claimants is an improper assumption of judicial power. On the other hand, requiring a new administration to be raised results in the incurring of needless expense and diminution of the fund, especially if claimants fail to establish their alleged relationship.

After holding several conferences with Judith J. Jamison, Special Assistant Attorney General, who is assigned to handle escheat matters in Philadelphia, we have agreed to adopt the following procedure:

The person who claims to be the next of kin of a decedent entitled to funds paid into the State treasury shall file a petition with the court which ordered the fund paid to the state, requesting a hearing to enable petitioner to establish his relationship to decedent. This petition shall contain a recitation of the pertinent facts and shall have attached thereto a family tree establishing the alleged relationship. Notice of said hearing shall be given to the Attorney General and any other party in interest in such manner as may be directed by the auditing judge.

If the proof submitted by petitioner satisfies the auditing judge, he shall file a supplemental adjudication, making appropriate findings of fact and authorizing the Board of Finance and Revenue to distribute the fund in question to the next of kin.

If the administrator has not been discharged, he should be made a party to the proceedings and should assist in the investigation of the validity of the claims of the alleged next of kin. If the administrator has been discharged, notice of the filing of the petition should be given to him, but the court may proceed without his participation.

The sole purpose of these proceedings is to have the court adjudicate the relationship claimed by petitioner to decedent. If the relationship is established, the fund is awarded to him; if not, the fund remains in the State treasury.

What is said in this adjudication has no reference to situations in which the identity of the person entitled to the fund is definitely ascertained but the award is made to the State treasurer, either because his whereabouts cannot be ascertained or the court determines that he would not have the actual benefit, use, enjoyment or control of the fund, under the provisions of the Act of July 28, 1958, P. L. 678.

In the present case, the auditing judge finds as a fact that Paul V. Mitchell died on June 19, 1957, intestate, unmarried and without issue, leaving to survive him, as his heirs at law and next of kin, a sister, Olive M. Daddysman, a brother, Roger E. Mitchell, and a sister of the half-blood, Gloria R. Greenlee, each entitled to an equal one third share of his estate. By writings annexed hereto, however, the said Roger E. Mitchell and Gloria R. Greenlee assigned all their right, title and interest in the estate of decedent to the said Olive M. Daddysman. The fund is therefore awarded to Olive M. Daddysman, in her own right, and as assignee of Roger E. Mitchell and Gloria R. Greenlee, and the Board of Finance and Revenue is authorized to make payment of the fund, which had been paid into the State treasury in accordance with the adjudication of this court of May 7, 1958, in accordance with the award herein contained, subject, however, to deduction of such transfer inheritance tax as may be found to be due, as the same may be duly appraised and assessed.

And now, December 22, 1960, the account is reconfirmed nisi.